(C. D. 154)

F. VITELLI & SON *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided April 27, 1939)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.
*Joseph R. Jackson*, Assistant Attorney General (*Richard H. Welsh, Joseph F. Donohue*, and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is a suit against the United States brought by an importer to secure a refund of moneys claimed to have been collected in excess of the amount due upon an importation of what is described on the invoice and in the briefs of counsel as tomato paste. It was entered at the port of New York and assessed for duty purposes by the collector of customs at that port at 50 per centum ad valorem under the provision in paragraph 772 of the Tariff Act of 1930 for "tomatoes * * * prepared or preserved in any manner." Plaintiffs claim that the commodity is dutiable either under the provisions in paragraph 775 of the same law for "vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for," or as an unenumerated manufactured article under paragraph 1558 of that law.

The respective paragraphs, insofar as pertinent, are in the following language:

PAR. 772. Tomatoes in their natural state, 3 cents per pound; prepared or preserved in any manner, 50 per centum ad valorem.

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; * * * 35 per centum ad valorem * * *.

PAR. 1558. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Before we can resort to paragraph 1558, *supra*, we must search the act in order to determine whether this tomato paste is specially provided for in the law.

The process of manufacturing this tomato paste is described by the witnesses as follows. Ripe tomatoes as they come from the vine are washed and crushed in a machine with a cylindrical sieve of very fine wire mesh. By means of this crushing process the juice of the tomatoes and a portion of the pulp are recovered and the fiber and skins discarded. This juice is then run through a second process of

the same nature in which the sieve is even finer. The juice is then piped from the machine to a vacuum kettle and is of the consistency and general appearance of ordinary tomato juice. It is then cooked for some four hours, the vapor being condensed and drawn off. As a result of these processes a thick paste-like mixture is obtained with about one-fifth of its normal water content. It is then packed in cans and sterilized for twenty minutes and in that condition is imported into this country. From this description it appears that the instant commodity is similar to if not identical with the tomato paste involved in the cases of *Columbo Co.* v. *United States*, 21 C. C. P. A. 302, T. D. 46819, and *Del Gaizo Distributing Corp.* v. *United States*, 24 C. C. P. A. 64, T. D. 48376.

In the *Columbo Co.* case the issue was between the provisions of paragraphs 772 and 775, *supra*. The tomato paste there involved was apparently a similar type to that before us in the instant case, judging from the description of the process of manufacture as set forth in the decision of the court. In deciding the issue the appellate court considered first whether tomato paste fell within the provision for pastes composed of vegetables. The court considered the legislative history of the provision and concluded from such consideration that the term "pastes" as used in said paragraph was intended to include only such pastes as were finished, or substantially finished food preparations. For the reason that the record was silent in regard to the use of the tomato paste there under consideration and it had not been shown to be a finished food preparation, they overruled the claim under said paragraph 775. The court, after discussing the tariff history of the paragraphs stated:

\* \* \* From the foregoing, it would appear, in the absence of evidence to the contrary, that ordinary tomato paste is not a finished food preparation, fancy or otherwise, but a mere material to be used as an ingredient of such preparations.

We are of opinion that, in order to ascertain the meaning and scope of the term "pastes" contained in paragraph 775, the rule of *noscitur a sociis* should be applied, and that giving consideration to that rule of interpretation, and to the legislative history of the provisions in question, it was intended by the Congress to include within that term finished, or substantially finished, food preparations, not mere materials which are used, together with other materials, in the manufacture of such preparations.

In the *Del Gaizo Distributing Corp.* case, *supra*, the importer, apparently in an attempt to meet the objection made in the *Columbo* case, *supra*, produced considerable evidence as to the use of the tomato paste, and incorporated the record in the *Columbo* case. Upon a finding that the plaintiff had failed to prove that the tomato paste there involved was a finished product and not a mere material to be used as an ingredient in food preparations, and, indeed, had proven that the contrary was the fact, the appellate court upheld the Government contention that under the doctrine of *stare decisis* the decision in the *Columbo* case, *supra*, was controlling as to the question of

"pastes." It also held that the commodity there before the court was not a sauce as claimed, under the provisions of paragraph 775, *supra*, but was properly dutiable as "tomatoes prepared or preserved," under paragraph 772, *supra*, affirming the finding of this court.

In the instant case the attorney for the plaintiffs states in his brief that his claim is based upon an entirely different theory and one that was not presented in either of the cases above cited. It is his contention that the tomato paste here involved has lost its identity as tomatoes and has become a new and distinct article manufactured from tomatoes and as such is not covered by said paragraph 772. He further contends that even if we hold that the common meaning of the language used in said paragraph 772 is broad enough to include this merchandise it is excluded therefrom by commercial designation. He states his reasons for his position to be that said paragraph 772 provides for "tomatoes in the natural state" at 3 cents per pound and that the descriptive provision in the latter part of the paragraph, "prepared or preserved in any manner" relates back to and modifies the expression "tomatoes in their natural state." In other words, that the only tomatoes provided for in the paragraph are those that are either in their natural state or are "in the natural state, prepared or preserved in any manner." A mere statement of this contention would seem to prove its fallacy. However, as it is seriously advanced by the plaintiffs, we will consider their arguments in support thereof. One of the arguments advanced in the brief is that the Treasury Department has held in T. D. 46515–2 that tomato juice is not dutiable under this paragraph but is properly dutiable under the provision for beverages not specially provided for in paragraph 808 of the Tariff Act of 1930, and that, therefore, if tomato juice is not provided for in said paragraph 772, tomato paste, which is manufactured from tomato juice, cannot be dutiable under that paragraph. Counsel evidently overlooks the rule of classification that where an article falls within a tariff provision because of its use, and also within the terms of another provision because of its material, character, origin, or composition, it should be classified according to its chief use. *Drakenfeld* v. *United States*, 2 Ct. Cust. Appls. 512, T. D. 32248. (See also *Collins* v. *United States*, 3 Ct. Cust. Appls. 83, T. D. 32356.) It may very well be that the Treasury Department, in making the ruling referred to, found that the chief use of tomato juice was as a beverage.

Nine of plaintiffs' witnesses testified as to the commercial designation of the term "tomatoes." However all of this testimony was based upon the following assumption:

Assuming that the common meaning of the word "tomatoes" includes not only the fruit of the tomato plant either in its natural state or preserved in its natural state, but also includes paste or sauce made by crushing the fruit and removing the skins, seeds, and part of the pulp and then boiling (evaporating) until a thick putty-like paste results, is the commercial meaning of that term the same or

different?   Was the commercial meaning of that term the same or different on or immediately prior to June 17, 1930?

We consider it unnecessary to lengthen unduly this decision by a résumé of the testimony adduced in response to this question, inasmuch as it was based upon an assumption and not a fact and further that we are unable to agree with plaintiffs' interpretation of the paragraph.   A reading of the same indicates that Congress used the language generally employed in providing for commodities in their natural state and also for those commodities when something has been done to prepare or preserve them.

Moreover, this question of commercial designation arose and was passed upon in the *Del Gaizo* case, *supra*.   We think the holding of the court there as to the applicability of the rule of commercial designation is equally applicable here.   We quote the language of Judge Garrett, speaking for the court, as follows:

> The general rule long has been established and followed that, since Congress in tariff legislation speaks in the language of commerce, if it be properly shown that a tariff term has a commercial meaning different from its common meaning, the commercial meaning controls the classification of the merchandise embraced within the term.   This is not true, however, in cases where Congress has indicated that the words of the statute must be understood and applied according to their common meaning.   *I. Shalom & Co., Inc. v. United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067.
>
> In cases where Congress used the words "of all kinds" in connection with merchandise, the rule of commercial designation was held to be excluded.   *Habicht, Braun & Co. et al. v. United States*, 2 Ct. Cust. Appls. 457, T. D. 32206; *Koch & Co. v. United States*, 6 Ct. Cust. Appls. 534, T. D. 36148.
>
> In the *Koch & Co.* case, *supra*, the court said:
>
> * * *   "Nippers and pliers *of all kinds*" expressly includes that kind commonly as well as that kind commercially so known; and, obviously, excludes *ex vi termini* application of the rule of commercial designation which would relate the statute to but one of possibly several kinds of nippers and pliers.   * * *   [Italics quoted.]
>
> It is our view that the phrase "in any manner" has the same effect in the case of the merchandise here involved as did the phrase "of all kinds" in the cases cited.
>
> * * *   It is perfectly clear that the merchandise is tomatoes prepared and preserved in a specifically described manner.   It contains no ingredient other than tomatoes, except that in some instances a negligible amount of flavoring, "such as a basil leaf" is added.
>
> It seems quite clear to us that Congress by using the phrase "in any manner" intended that all "Tomatoes * * * prepared or preserved" should be classifiable under paragraph 772, whether commonly or commercially so known, and that it is, therefore, immaterial whether the term has a commercial meaning which differs from its common meaning.   * * *

While it is true that the question was not presented to the court in that case in the light in which it has been presented in the instant case, we think the language is equally applicable here.

Moreover this holding is in line with the evident intent of the legislative body, which is the prime objective of all attempts to construe statutes.   As indicative of the intent of Congress in the present

instance, we quote from the committee print of H. R. 2667, the bill which afterwards became the Tariff Act of 1930, as passed by the House and reported to the Senate, where at page 181 under paragraph 770 of the act of 1922, with changes made by the House, we find the following:

PAR. 770. Tomatoes in their natural state, one half of 1 cent *3 cents* per pound; tomato-paste, 40-per centum ad valorem; all other, prepared or preserved in any manner, 15 per centum *40 per centum* ad valorem.

(The matter omitted by the House bill is printed in stricken through type. The matter *italicized* is new matter added by the House bill.)

Following the paragraph as quoted above we find the note:

NOTE.—Tomato paste has been transferred to the basket clause of this paragraph.

This wording of the paragraph with no change except that the rate of 40 per centum ad valorem was raised to 50 per centum ad valorem, was adopted as paragraph 772 of the Tariff Act of 1930 now before us for consideration. It is therefore clear that Congress intended tomato paste, the name applied to the instant commodity, was to be provided for in the clause "prepared or preserved in any manner." The collector having adopted that classification and having assessed the instant commodity at the rate therein provided, we hold that his finding was correct and that plaintiffs' claim should be and the same is hereby overruled.

Judgment will be rendered accordingly. It is so ordered.