## KOCH & Co. *v.* UNITED STATES (No. 1590).[1]

1. PIVOTED-JAW TOOLS NOT NECESSARILY "NIPPERS" OR "PLIERS."

Surgical instruments are not made classifiable as "nippers" or "pliers" under paragraph 166, tariff act of 1913, by reason of the fact that they have two lever handles working on a pivot and operating two cutting, gripping, or pinching jaws or blades.

2. CONSTRUCTION:

To hold this would reduce to surplusage the enumeration elsewhere in the act of other instruments embodying this mechanical principle and render either the word "nippers" or the word "pliers" in this paragraph unnecessary.

3. LEGISLATIVE HISTORY.

Congress rejected a motion to amend paragraph 166 so as to include surgical and dental instruments; and the court declines to adopt a construction effecting a result precisely contrary to this action by Congress.

### United States Court of Customs Appeals, January 28, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7763 (T. D. 35628).

[Reversed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* and *George J. Puckhafer*, of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal presents the question of the appropriate dutiable classification of certain surgical instruments. Representative samples are before the court. The record discloses that they are uniformly referred to and described as follows: Exhibit 1, Auword's cranioclast, an instrument used in some cases of stillbirth for crushing the head

---

of the dead fetus to facilitate its extraction. This instrument is composed of heavy jaws between which is operated a tongue or lever, the contact jaws of which are serrated. Force is applied by a screw, operating alternately to bring each of the outer jaws into immediate contact with the interior tongue, whereupon they are locked by suitable device. The outer jaws operate upon separate fulcrums, which constitute parts of the center tongue. The force applied in operation in the crushing of the skull is effected by means of a screw, similar to the force applied to a blacksmith's or carpenter's vise. Exhibit 2, Tarnier's obstetrical forceps, used in childbirth. To this instrument is attached a mechanism whereby extra force may be exercised in its operation. Exhibit 5, Duplay's tenaculum forceps. This is a hooked instrument, resembling scissors, operating upon a fulcrum, the jaws being sharp pointed, meeting at right angles, and is used in seizing the coats of a divided blood vessel and drawing it out to be tied. Exhibit 6, Pean's artery forceps, used for holding arteries, an instrument with jaws at right angles with serrated interiors. Exhibit 7, Murphy's button forceps, used for adjusting Murphy's button, an appliance used in intestinal surgery. Exhibit 8, Hartman's articulated nasal forceps, an instrument operating upon a double fulcrum. Exhibit 9, Byford's compression forceps, used for clamping arteries. Exhibit 9a, Tait's artery forceps, used for clamping arteries. Exhibit 10, Husson's needle holder, used for holding the needle in sewing up wounds. Exhibit 11, Jones's angular curved artery forceps, used for clamping arteries. Exhibit 12, Pean's hysterectomy forceps, used in intestinal surgery. Exhibits 6 to 12 are similar scissors-appearing instruments with suitable jaws for the designated uses. Exhibit 13, Wieder's needle holder, used for holding the needle in sewing up wounds. There is also in the record an illustrative Exhibit H, which is a bone-cutting instrument.

The instruments were classified for dutiable purposes by the collector at the port of New York as nippers or pliers under the provisions of paragraph 166 of the tariff act of 1913, reading:

166. Nippers and pliers of all kinds wholly or partly manufactured,   *   *   *.

The importers, who are appellants here, make contention that they are not so dutiable but properly ratable for duty purposes as articles or wares not specially provided for, composed wholly or in chief value of iron or other metal, under the provisions of paragraph 167 of that act. The Board of General Appraisers overruled the protests.

The first issue tendered by appellants before the board and here renewed was and is that of commercial designation. The board overruled this contention. Error therefor is assigned. Were the question of commercial designation in the case, the court would

with much hesitation affirm this finding of the board under the decisions cited in this record. While the more confined doctrine of commercial designation denies its application where "there is no reference in the statute, either expressly or by implication, to any commercial usage" (Newman v. Arthur, 109 U. S., 132–138), the converse is presented by the language of this paragraph. "Nippers and pliers *of all kinds*" expressly includes that kind commonly as well as that kind commercially so known; and, obviously, excludes *ex vi termini* application of the rule of commercial designation which would relate the statute to but one of possibly several kinds of nippers and pliers. Habicht, Braun & Co. et al. *v.* United States (2 Ct. Cust. Appls., 457; T. D. 32206).

The inquiry therefore becomes, Are these instruments "nippers and pliers" as those terms are commonly used and understood?

In this ascertainment the board adopted as decisive a principle of mechanical operation, concluding:

Irrespective, therefore, of the technical trade names under which they may be known, we hold all of the articles here under consideration which, in the principle of their construction, have two lever handles working on a pivot, and which operate two cutting, gripping, or pinching jaws or blades, to be properly classifiable for duty under the provisions in said paragraph 166 for "nippers and pliers of all kinds, wholly or partly manufactured."

The court after much deliberation finds unmistakable evidences written in the act that Congress did not adopt these words in that sense. If Congress intended by the words "nippers and pliers of all kinds, wholly or partly manufactured," to include at the prescribed 30 per centum ad valorem rate of duty all instruments "which have two lever handles working on a pivot, and which operate two cutting, gripping, or pinching jaws or blades," then, why did it expressly provide in paragraph 128 for "scissors and shears, and blades for the same, finished or unfinished, 30 per centum ad valorem?" Or, since that latter provision was of both previous legislative ancestry and earlier placement in the act, if Congress was by such enumerations levying a tax upon all instruments possessing a similar mechanical operative principle, why was it necessary, after the provisions of paragraph 128, to insert those of 162? Or, if the mention of those named taxed all instruments of this mechanical principle why enumerate both nippers *and* pliers? Either enumeration in that view covered the entire trade. Moreover, it is shown that in practical application and administration this principle of decision could not survive the logical test *reductio ad absurdum.* Attempting to apply this principle previously announced by the board, the Treasury Department in T. D. 34270 observes:

While the department concurs in the reasoning of the board in the decisions cited and followed the principle underlying the said decision in T. D. 33094,

where it held that nail or manicure nippers were dutiable under paragraph 198 of the tariff act of 1909, it does not follow that all jaw tools or instruments having two handles pivoted together are included within the terms "nippers" or "pliers." For instance, it would not be seriously contended that bell punches and ticket punches used by conductors on cars or buttonhole punches are nippers or pliers as these terms are ordinarily used.

There might be added to the foregoing that such articles as rivet punches, certain post-hole diggers, and numerous other similar tools are equally within this operative principle. The court is loath to attribute to Congress a purpose which at once renders other provisions of the act surplusage and the enforcement of which individually encounters numerous arbitrary exceptions.

We think the legislative concept evidences a more accurate and discriminating use of those words. Generally, according to Knight's American Mechanical Dictionary, pliers, nippers, scissors, shears, forceps, pinchers, and all instruments which like these operate upon the mechanical principle stated, are known as "jaw tools," which by that authority are defined as "tools having the capacity for grasping, as between jaws or fingers," Thereupon that authority enumerates 74 such, including "forceps," "nippers," "pliers," "scissors," "shears," "tongs," and "tweezers." Under the title "forceps" that authority observes:

*Forceps*—A tool applied to grasping, and consisting of two portions pivoted together, the ends forming, respectively, handles and jaws.

Shears, scissors, pincers, pliers, tongs, calipers, nippers, punches, and some other tools agree in the pivoting of duplex parts, *but they differ in some peculiarity of the jaws or in their special application for cutting -or grasping.* See jaw tools.

    ✳       ✳       ✳       ✳       ✳       ✳       ✳

Specifically: In obstetrics, an instrument having a pair of curved blades for grasping the head of the fetus and assisting delivery.

Definitions of nippers, pliers, and pinchers are then given as follows:

*Nippers.*—1. A grasping tool with cutting jaws. ✳ ✳ ✳ 2. (Dentistry, etc.) The mechanical forceps or nippers used by dentists are for operating on the plates. ✳ ✳ ✳

*Pliers.*—A small pair of pinchers with long jaws, adapted to handle small articles, such as the parts of a watch or other fine machinery. It is also specially adapted for bending and shaping wire. ✳ ✳ ✳

*Pinchers.*—An instrument having two handles and two grasping jaws, formed of two pieces pivoted together. Pinchers are adapted for special work, such as drawing nails, for shoemakers' use ✳ ✳ ✳.

While all such tools are operated upon a similar mechanical principle and while the various lexicographers defining the one may and often do define the one as "like" or a "kind of" the other—it is only in that they possess an operative principle common not alone to them but numerous other tools, but they do, as stated by Knight,

" *differ* in some peculiarity of the jaws *or in their special application* for cutting or grasping."

The court is of the view that Congress legislated with a view to these more accurate definitions for the following reasons:

First. The language of the act so argues. It was in this view alone that employment of both words " nippers *and* pliers " in paragraph 166 was necessary; the separate provision for shears and scissors in paragraph 128 or this entire paragraph otherwise becomes surplusage; and the enumeration of blacksmiths' " tongs " specifically in paragraph 122 evidences that Congress was giving discriminating attention to these related subjects.

Second. Such words, " nippers," " pliers," " forceps," and " tongs," are words of common everyday use known to and employed by all men of affairs which convey to the mind of ordinary understanding and experience instruments of different construction and use; and, while commercial designation is not in the case, the testimony, catalogues, and exhibits herein become and are plenary and satisfying evidence, corroborative and evidentiary, of the common use of these terms in their distinct and different meanings. Assuredly the man of the farm, the man of the bench and shop, the man of great telegraph, telephone, or railroad operations, or the man in touch with the common automobile operations of the day, immediately upon the suggestion of the words, forms a definite, distinct, and discriminating idea of what is meant by " pliers," " pinchers," or " nippers," which in no sense includes dental, obstetrical, or other " forceps," the suggestion of which immediately carries the mind to the dental laboratory or surgical hospital.

Third. Specific provision for nippers and pliers as a tariff entity first appeared as paragraph 198, tariff act of 1909. It was apparently submitted at the request of a firm of manufacturers of tools represented herein by Exhibits B and F, nippers, and C, D, and E, pliers, the well known and commonly understood tools of that name. Tariff Hearings, Committee on Ways and Means, 1908–1909 (vol. 3, p. 2782). The same firm and that industry alone appeared in 1913. Tariff Hearings, Committee on Ways and Means, 1913 (vol. 2, p. 2070). In both instances it was represented that this firm manufactured a particularly high-grade article of material especially fitted therefor. No other interests appeared, and apparently Congress legislated with a view to this industry alone.

Fourth. Much stress is laid by the board in its opinion and the Government herein upon the legislative fact that paragraph 198, act of 1909, contained the parenthetical words "(except blacksmiths' tongs, surgical and dental instruments and parts thereof)," which phrase was omitted from paragraph 166 of the present act. It is claimed that this omission implies an intention or interpretation

upon the part of Congress that its omission included such instruments within the remainder of the paragraph. There is undeniable weight to this argument, and were this the only pertinent phase of that point we might be inclined to hold it controlling. That Congress did not thereby intend " blacksmiths' tongs " to so fall for dutiable purposes is expressly shown by the transfer of these tools to and their express inclusion in paragraph 122 for dutiable purposes.

Affirmative contrary action was also had as to surgical and dental instruments. On August 12, 1913, Senator Smoot requested the Finance Committee to reconsider paragraph 166 (then paragraph 168) with a view of appending to it a provision for surgical and dental instruments. Senator Thomas announced for the Finance Committee that the proposal would receive its consideration (Congressional Record, vol. 50, pt. 4, 63d Cong., 1st sess., p. 3285). The matter came up again on September 2, 1913, and the following proceedings occurred (Congressional Record, vol. 50, pt. 4, 63d Cong., 1st sess., p. 4070) :

Mr. SMOOT. There is one paragraph that I should like to call the attention of the Senator from Colorado to before we reach that paragraph that was passed over, and that is paragraph 168. The Senator will remember I asked that there be an amendment made to that paragraph.

Mr. THOMAS. Yes; that was considered and the full committee objected to the amendment. It was presented along the line of the Senator's suggestion to the full committee, but was not approved. The Senator is referring to surgical and dental instruments?

Mr. SMOOT. I suggested to include in that amendment " surgical or dental instruments or parts thereof."

Mr. THOMAS. The committee did not approve of that amendment.

Mr. SMOOT. The committee refused to accept the amendment?

Mr. THOMAS. Yes.

Mr. SMOOT. Mr. President, so that the record will be straight, I desire at this time to offer an amendment to paragraph 168. After the word "nippers" I move to insert a comma and the words " and surgical and dental instruments and parts thereof."

The PRESIDING OFFICER. The amendment will be stated.

The SECRETARY. In paragraph 168, page 49, line 24, after the word " nippers " insert a comma and the words " surgical and dental instruments or parts thereof."

The amendment was rejected.

Congress, therefore, having expressly refused to include surgical or dental instruments in paragraph 166 for dutiable purposes, the court does not feel warranted in here including them, holding Congress did that by implication which it expressly refused to do by direction.

The court is of the opinion for the reasons stated that paragraph 166 does not include for dutiable purposes those surgical instruments represented by these samples, all of which are fairly shown by the record to be commonly known as " forceps " and not as " nippers " or " pliers."

*Reversed.*