(C. D. 584)

Ritter Carlton Co. *v.* United States

United States Customs Court, Second Division

(Decided January 22, 1942)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. Fitzgibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described on the invoice as "Multigrip-Wrenches." Duty was levied thereon at the rate of 60 per centum ad valorem under the provision in paragraph 361 of the Tariff Act of 1930 for "slip joint pliers." It is claimed that said articles are properly dutiable at the rate of 45 per centum ad valorem under the provision in paragraph 396 of said act for "wrenches."

At the hearing, held at New York on April 14, 1941, the plaintiff offered in evidence the testimony of a single witness, Herbert Francis Ritter, managing partner in the plaintiff-firm, who testified that his firm was principally engaged in importing small tools, including pliers and wrenches, from Europe and selling the same throughout the United States; that he was familiar with the instant merchandise, a sample of which was admitted in evidence as exhibit 1; that he had sold such merchandise under the name of "multigrip wrenches" which articles are depicted by item number 619/3 bearing that name on the first page of the folder admitted in evidence herein as illustrative exhibit A.

At this juncture a number of orders received by the plaintiff-firm, and a group of carbon copies of bills sent to customers by said plaintiff-firm, were admitted in evidence herein as collective illustrative exhibits B and C, respectively, over objection interposed by counsel for the Government.

The witness then testified that he was familiar with the long-nosed pliers represented by the sample admitted in evidence herein as illustrative exhibit D, also with the slip-joint pliers represented by the sample admitted in evidence as illustrative exhibit E; that the jaws of said illustrative exhibits D and E can be firmly closed, which is not true of the jaws of exhibit 1; that the jaws of exhibit 1 and of illustrative exhibit E are adjustable while those of illustrative exhibit D are not adjustable; that one would have great difficulty in grasping a nut or bolt with illustrative exhibit D, whereas with illustrative exhibit E, which provides a firmer hold, a grasp may be had on a small nut.

At this juncture the witness demonstrated in open court the handling by exhibit 1 and illustrative exhibits D and E of the nut or bolt represented by the sample in evidence herein as illustrative exhibit F, and the piece of pipe represented by illustrative exhibit G.

The witness then testified that he could not get a firm grasp or grip on the piece of pipe (illustrative exhibit G) either with illustrative exhibit D or E, whereas he could get a good grip thereon by using the third position of exhibit 1; that with exhibit 1 he was able to secure a firm grip on the small nut in evidence herein as illustrative exhibit H; that with exhibit 1 he could not bend any of the wire in evidence herein as illustrative exhibit I for the reason that the jaws of exhibit 1 will not close tightly enough to grasp the wire; that with exhibit 1 he could not pick up any of the watch parts in evidence herein as illustrative exhibit J but which he could pick up with illustrative exhibits D and E; that with the latter illustrative exhibits he could cut and shape the piece of wire represented by illustrative exhibit K, which he could not do with exhibit 1.

On cross-examination the witness testified in part as follows:

X Q. Is it your position that Exhibit 1 is not a pliers because it will not cut wire?—A. Not only that. That is one of my contentions.

X Q. All pliers cut wire, do they?—A. Practically all pliers. I don't think of any now that do not.

X Q. You can't think of any that don't cut wire?—A. Except this one you are bringing now. [Referring to Illustrative Exhibit L.]

*       *       *       *       *       *       *

X Q. This illustrative exhibit (Illus. Ex. L) is a slip-joint pliers?—A. Yes.

X Q. With two positions?—A. Yes.

X Q. In one of them, the jaws do not close; is that a fact?—A. Yes.

X Q. So there are pliers of which the jaws do not close; is that right?—A. In the second position, slip-joint pliers jaws do not close.

X Q. Isn't it a fact that in all pliers you know of the gripping of the object depends on the pressure of the hand?—A. Not exactly, there is one power pliers that does not.

X Q. What do you mean by "power pliers"?—A. There is very little pressure applied to the handle.

X Q. But you do apply pressure to the handle for the locking of the jaws?—A. Yes.

X Q. With all pliers?—A. Yes.

X Q. That is also true of Exhibit 1?—A. Yes, sir.

X Q. That is not true of wrenches?—A. Generally no.

X Q. Do you know of any wrench in which the pressure of the jaws upon the object depends on the pressure of the hand?—A. This multigrip wrench of ours.

X Q. That is the only one you know of?—A. And similar wrenches of other people.

X Q. Do you know of the Kraeuter Catalogue?—A. No, sir; I am not familiar with it.

X Q. Have you ever seen it?—A. I doubt it.

X Q. Do you know that Exhibit 1 is listed in that catalogue as ignition pliers?—A. No, sir; I do not.

X Q. Do you know Mr. Bunting, the examiner?—A. Yes, sir.

X Q. Did Mr. Bunting show this catalogue to you with the pictures of Exhibit 1 in it where it is identified as ignition pliers?

\*          \*          \*          \*          \*          \*          \*

A. No, Mr. Bunting didn't show me that catalogue. He spoke to me about it over the telephone.

At this juncture counsel for the Government offered item 743 of the said catalog which was admitted in evidence as illustrative exhibit M, over the objection interposed by counsel for the plaintiff on the ground that the jaws of the pliers so represented by said item closed.

At the second hearing, held at New York on May 12, 1941, the Government offered in evidence the testimony of a single witness, William H. Hall, assistant sales manager of Kraeuter & Co., manufacturers of pliers, chisels, wrenches, and drop forgings, who testified that he had sold such articles throughout most of the United States during the last 22 years; that nothing similar to exhibit 1 was made in the United States; that item 743 designated as ignition pliers in his company's catalog (illustrative exhibit M) was similar to exhibit 1 except as to size; that in his opinion exhibit 1 was not a wrench but a plier. Asked to describe the difference between a wrench and a plier the witness testified:

\*          \*          \*          \*          \*    '    \*          \*

A. The pliers is a tool made of two halves, as we term it. There are different types. There is the slip joint pliers which this happens to be and makes an adjustable jaw, but it has the two handles and requires pressure by the hand on the handles to get the grip; whereas a wrench is usually a solid type either open end or the monkey wrench type which has a screw arrangement, but always has one handle.

On cross-examination, the witness testified in part as follows:

X Q. Is this article, Exhibit 1, long-jawed pincers?—A. Not pincers; I wouldn't say they are pincers.

X Q. They are not long-jawed pincers?—A. That's right.

X Q. Isn't it a fact that the jaws of that exhibit cannot firmly close or hold together?—A. That's right.

X Q. Isn't it also a fact that Exhibit 1 is not adapted to handle or manipulate small articles, such as parts of watches?—A. That's true.

X Q. Isn't it further a fact that Exhibit 1 is not suitable or adapted for bending, shaping, or cutting wire?—A. That's true.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Isn't it further a fact that Exhibit 1 cannot be used for bending or cutting metal rods?—A. That depends on the size of the material.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Do you recognize Collective Illustrative Exhibit I as metal rods?—A. Two of them I would call wire; this larger one you might term a rod.

X Q. Referring to this larger one that is included in Collective Illustrative Exhibit I, can you bend that using Exhibit 1?—A. Do you want me to bend it?

X Q. If you can. [The witness bends the article included in Collective Illustrative Exhibit I referred to.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

X Q. Isn't it a fact that the surface of the jaws of Exhibit 1 are not parallel in a closed position?—A. Very close to it. I have to measure it.

X Q. Measure it and tell me whether or not they are parallel in a closed position.—A. They are not.

X Q. Did you say you are familiar with the uses of Exhibit 1?—A. I am.

X Q. Can Exhibit 1 be used for twisting or turning bolts or nuts?—A. It can.

X Q. Can it be used for turning or twisting pipe?—A. It's rather light for that work.

The only question before us is whether the imported merchandise consists of pliers or wrenches. There being no evidence of commercial designation, the common and ordinary meaning of the words in question must determine the issue. The dictionary definitions of the terms are as follows:

Webster's New International Dictionary 1929 and 1933 editions—

*plier* 2. pl. A kind of small pinchers with long jaws used for bending or cutting metal rods or wire, for handling small objects, etc.

*pincers* 1. An instrument having two handles and two grasping jaws working on a pivot, used for gripping things;

*wrench* 5. An instrument, often a simple bar or lever with jaws or an angular orifice either at the end or between the ends, for exerting a twisting strain, as in turning bolts, nuts, screw taps, etc.

Standard Dictionary (Funk & Wagnalls) 1910—
Funk & Wagnalls New Standard Dictionary 1939—

*plier* 2. pl. Small long-jawed pincers for bending wire, etc., or for holding small objects.

*pincers* 1. An instrument having two lever-handles and two jaws working on a pivot; nippers.

*wrench* 2. A tool for twisting or turning bolts, nuts, pipe, or the like, consisting of a lever with jaws, lugs, or a socket adapted or adjustable to fit a nut, bolt-head, or other object to be turned.

The Oxford Dictionary 1909—

*plier* 2. pl. Pincers, usually small, having long jaws mostly with paralled surfaces, sometimes toothed; used for bending wire, manipulating small objects, etc.

*pincers* 1. A tool for tightly grasping or nipping anything, consisting of two limbs pivoted together, forming a pair of jaws with a pair of handles or levers by which they can be pressed tightly together.

*wrench* 5.  *  *  *  c. A tool or implement of various forms, consisting essentially of a metal bar with (freq. adjustable) jaws adapted for catching or gripping a bolt-head, nut, etc., to turn it;  *  *  *.

Knight's Mechanical Dictionary—

*pliers.* A small pair of pinchers with long jaws, adapted to handle small articles, such as the parts of a watch or other fine machinery.   It is also specially adapted for bending and shaping wire.

*wrench.* A bar having jaws adapted to catch upon the head of a bolt or upon a nut to turn it, or to hold the latter from turning in some cases when the bolt is being rotated.

Some wrenches have a variety of jaws to suit different sizes of nuts and bolts.

*       *       *       *       *       *       *

In the self-adjusting wrenches and pipe-tongs (Fig. 7369), the curved inner faces of the jaws are serrated; various sizes of pipes may be firmly grasped by opening the jaws to a greater or less extent and inserting the pipe to a proper distance within the opening, one hand being employed to compress the handle of the movable jaw, and the other to operate that of the fixed jaw, which acts as a lever when the implement is used as a wrench.

The Century Dictionary and Cyclopedia 1911—

*plier* 3. pl.   Small pincers with long jaws, adapted for handling small articles, and also for bending and shaping wire.

*pincers* 1.   A tool having two hinged jaws which can be firmly closed and held together.

*wrench* 5.   A tool consisting essentially of a bar of metal having jaws at one end adapted to catch upon the head of a bolt or a nut, or to hold a metal pipe or rod, so as to turn it.   Some wrenches have a variety of jaws to suit different sizes and shapes of nuts and bolts, and others, as the monkey-wrench, have an adjustable inner jaw.

Applying the foregoing definitions, together with the testimony herein, to exhibit 1 it will be seen that said exhibit 1 is not a plier because—

1. It is not a small long-jawed pincers.

2. The jaws cannot be firmly closed and held together (except when grasping an object larger than ¼'' in cross-section).

3. It is not adapted to handle or manipulate small articles such as parts of a watch.

4. It is not adapted for bending, shaping, or cutting wire.

5. It cannot be used for bending or cutting metal rods.

6. The surfaces of the jaws are not parallel.

On the other hand, said exhibit 1 is a wrench because—

1. It is a tool for twisting or turning bolts, nut, pipe, etc.

2. It is a tool for exerting a twisting strain.

3. The jaws are adapted to catch upon the head of a bolt or nut.

4. The jaws are adapted to hold a metal pipe or rod, so as to turn it or prevent turning.

5. It has an adjustable inner jaw.

The definition and description of self-adjusting wrenches contained in Knight's American Mechanical Dictionary, *supra*, is particularly worthy of note. The illustration referred to therein, figure 7369, shows an article very much like said exhibit 1. The similarity of design and construction is most pronounced if the jaws of exhibit 1 are opened slightly and it is placed on the adjoining page to figure 7369. The use and operation of said exhibit 1 on pipe, as demonstrated and described by the witness Ritter is identical with the description of the use and operation given of the wrench so depicted.

The said demonstration we believe shows exhibit 1 to belong to the category of articles known as wrenches rather than of pliers. The article is used in precisely the same manner and for the same purposes that a wrench is used, and for those purposes only. For most purposes they are interchangeable and in many cases exhibit 1 has a decided advantage in speed and adaptability. The definitions quoted herein make use the criterion for determining whether or not an article is a plier. There can be no doubt that said exhibit 1 does not have any of the uses of pliers. Under these definitions the method of construction and operation cannot outweigh the fact that exhibit 1 has none of the uses of pliers while having all the uses of wrenches and has those uses only.

On the established facts and the law applicable thereto we hold the articles described as "multigrip-wrenches" on the invoice accompanying the entry covered by this suit, and which were assessed with duty at the rate of 60 per centum ad valorem under paragraph 361 of the Tariff Act of 1930 as "slip-joint pliers," to be properly dutiable at the rate of 45 per centum ad valorem under paragraph 396 of said act as wrenches, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.