(C.D. 2382)

THE SPIEGEL BROS. CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 10, 1963)

*John D. Rode* for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Alfred A. Taylor, Jr.,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Importations of two types of tools described on the invoices as "Revolving Punches" and "Eyelet attachers," respectively, were classified by the collector of customs as "other pliers

valued @ more than $2 per doz." in paragraph 361 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 361), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and duty was imposed thereon at the compound rate of 3⅓ cents each, plus 20 per centum ad valorem.

Plaintiff's protest, so far as pertinent here, makes the following claims—

Said merchandise is not dutiable as assessed. It is not pliers or otherwise dutiable under Par. 361. It is properly dutiable at the appropriate rate as machines n.s.p.f. under Par. 372 or said Paragraph as modified or amended or at 22½% under Par. 397 and T.D. 51802 or at 21%, 20% or 19% under Par. 397 and T.D. 54108 or at 22½% under Par. 396 and T.D. 52462.

In its brief, however, plaintiff relies primarily upon the provisions of paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, stating that the claim for classification in paragraph 372 is "made, but not pressed."

The pertinent text of paragraphs 361, 397, and 372 is here set forth.

Paragraph 361 of the Tariff Act of 1930, as modified by the Annecy protocol, *supra:*

Pliers (not including slip joint pliers), pincers, and nippers, and hinged hand tools for holding and splicing wire, finished or unfinished :
> Valued at not more than $2 per dozen * * *
> Valued at more than $2 per dozen_____ 3⅓¢ each
> and
> 20% ad
> val.

Paragraph 397 of said act, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured :
> \* \* \* \* \* \* \*
> Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer :
>> Typewriter spools * * *
>> Not wholly or in chief value of tin or tin plate :
>>> Carriages, drays, * * *
>> \* \* \* \* \* \* \*
>> Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____ 19% ad val.

Paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the sixth protocol, *supra:*

Machines, finished or unfinished, not specially provided for :
> Adding machines * * *
> \* \* \* \* \* \* \*
> Other * * *_____ 11½% ad val.

As we view the record, the following questions are presented for our determination.

1. Are said revolving punches, with six tubes, and eyelet attachers, pliers, within the meaning of paragraph 361?

2. If question 1 is answered in the negative, are said articles machines within the meaning of said paragraph 372?

It obviously follows if said articles are neither pliers nor machines, they are encompassed by the catchall provisions of paragraph 397.

At the trial, it was stipulated that the two items in controversy are wholly or in chief value of iron or steel, not plated with gold lacquer.

The record made at the trial consists of the testimony of one witness called by the plaintiff and one witness by the defendant, together with certain physical and documentary exhibits.

The revolving punches are represented by plaintiff's exhibit 1, while the eyelet attachers are represented by plaintiff's exhibit 2.

Plaintiff's witness, Kurt J. Spiegel, testified in substance as follows: He was one of the founders of the plaintiff corporation in 1919 and has been president of it since 1948. The corporation is engaged in the general hardware and tool business, including the importation of tools. Spiegel had been familiar with the revolving punches about 30 years, having purchased and sold that item in substantial quantities throughout the country under the name of revolving punches. The witness produced "Catalog No. 61," published by his firm, and page 24 therein was received in evidence as exhibit 3, containing a picture showing the trade description of exhibit 1 as "Revolving Leather Punch." Page 27 of said catalog was received in evidence as exhibit 4 to indicate the trade description of the eyelet attachers. It is noted, however, that the magazine described the article as "Eyelet Setting Tool," rather than as an eyelet attacher. However, the picture is a representation of exhibit 2.

The method of using exhibit 1, and its purpose, are described by the witness as follows—

It is a tool that has a drum on which are attached six tubes that are hollow. There is a spring inside, so that you can turn the tubes as needed. When you press the handles of this tool against an anvil on the opposite side and put in between a piece of leather or other article, you punch a hole into it.

It is used on belts, shoes, or similar articles. The puncher has six tubes in different sizes so that different size holes may be made.

Spiegel had been familiar with the eyelet attachers, exhibit 2, and their use for about 5 years and had sold them in substantial quantities throughout the United States under the name of "eyelet fasteners." He described their use as follows:

It is used for the purpose of attaching an eyelet to a piece of leather, usually a shoe on which a hole has already been punched, and to attach this piece of metal to ring the hole properly. You attach the eyelet of this little part, and

then press the handles together, and automatically the eyelet will attach itself to the piece of leather, because of the pressure exerted by the hands.

Spiegel testified that, for many years, he had sold "all over the country" articles described as pliers and pincers, illustrated on catalog pages 6, 7, 8, and 9, marked collective exhibit 6. He agreed with the definition of pliers, which was read to him from Webster's New International Dictionary, second edition, page 1891, as follows: " 'A kind of small pincers, with long jaws, used for bending or cutting metal rods or wire, for handling small objects, etc.' " He stated that a plier could be used for various purposes, whereas the articles under consideration were used only for the specific purposes described above. A physical examination of exhibits 1 and 2 clearly demonstrates that those articles do not conform to the foregoing definition of pliers.

Defendant's witness, Walter D. Scott, had been an employee of Sargent & Co., at New Haven, since 1927; that Sargent & Co. is a manufacturer of builders' hardware, pliers, and handtools. During the past 5 years, Scott had been merchandising manager for all the company's products and was engaged in sales promotion, advertising, and cataloging of various products throughout the United States. Based upon his experience in manufacturing and sales of pliers, he stated that—

Exhibit 1 is and has been catalogued by our company as a revolving head spring belt punch plier.

      *      *      *      *      *      *      *

It is a plier because in the commercial acceptance of the term it consists of, it has two handles riveted together in such a way as to form a pair of handles and a pair of jaws, which gives a certain mechanical advantage in the operation of it, and regardless of what dies or punches or parts are affixed or become a part of the jaws, it remains a plier. * * *

The witness produced a Sargent tool catalog, which was received in evidence as defendant's exhibit A, and special reference was made to page 5, entitled "Leather-Working Tools, Spring Belt Punch Pliers, Revolving Head Punches," items No. 386–8″ and No. 286–8″, illustrating revolving head punches, such as exhibit 1.

When shown exhibit 2, the witness stated "This is an eyelet plier," his reasoning being that it has a plier frame, to which dies have been added, making it possible to punch a hole in fabric, leather, plastic, and cardboard. On page 8 of exhibit A, Scott referred to item No. 61, which has the appearance of exhibit 2, and is described in the catalog as an "Eyelet Plier," which the witness stated had been sold by his company as an eyelet plier for at least 50 years throughout the United States. Scott agreed with Spiegel that the only use of the merchandise illustrated by exhibit 1 was for punching holes in leather and similar articles.

Does this conflicting record afford an adequate basis for the court to determine whether the merchandise, represented by exhibits 1 and 2, is within the tariff classification of pliers in paragraph 361, *supra?*

In the absence of an established commercial designation of the word "pliers," there is the legal presumption that the common and commercial meanings are the same. In determining the common meaning of the term, the court may refresh its memory from dictionaries and other reliable authorities in addition to the definition above quoted. In Webster's New Collegiate Dictionary, second edition, 1956, we note the following:

plier, *n.* * * * Small pincers with long jaws, used for bending or cutting wire, for handling small objects, etc.

Webster's New World Dictionary, College Edition, 1960:

pliers, *n. pl.,* small pincers for handling small objects, cutting wire, etc.

Obviously, the articles represented by exhibits 1 and 2 do not conform to the foregoing definitions.

This view is supported by the following reference to the Summary of Tariff Information, 1929, page 775, under the heading "Pliers, Pincers, and Nippers," as follows:

Description and uses.—Pliers are forged steel tools adapted to grasping small objects, and often having a cutting edge. Nippers usually have only a cutting edge, which meets at the end instead of at the side. Pincers are similar in appearance to nippers. Pliers have the widest use of the three, and are used by all types of mechanics, by farmers and householders.

Reference is also made to the Summaries of Tariff Information, 1948, volume 3, part 3, page 183, under the same heading, as follows:

This summary includes pliers, pincers, nippers, and hinged hand tools, which are designed to meet the special needs of many industries and trades. Of these tools, pliers are the most widely used. They are designed to grasp small objects and frequently have side cutting edges. Slip-joint pliers, an adjustable type, can be used for holding objects of various sizes. Nippers, designed for cutting, have curved jaws with cutting edges on the end rather than on the side. Pincers are similar to nippers, but are used for grasping rather than for cutting. Hinged hand tools are linemen's tools, which are used for holding and splicing wire.

Plaintiff, in its brief, invites our attention to our decision in *Ritter Carlton Co.* v. *United States*, 8 Cust. Ct. 99, C.D. 584, wherein we held that certain multigrip wrenches were not pliers. We there cited the definition from Webster's New International Dictionary, together with other definitions of the term "plier," and expressed the following reasons why the article there under consideration was not a plier:

1. It is not a small long-jawed pincers.

2. The jaws cannot be firmly closed and held together (except when grasping an object larger than ¼″ in cross-section).

3. It is not adapted to handle or manipulate small articles such as parts of a watch.

4. It is not adapted for bending, shaping, or cutting wire.
5. It cannot be used for bending or cutting metal rods.
6. The surfaces of the jaws are not parallel.

The same reasons apply to exhibits 1 and 2 for excluding them from the designation of pliers.

In *H. Boker & Co., Inc.* v. *United States*, 56 Treas. Dec. 833, Abstract 9783, and in *Id.* v. *Id.*, 60 Treas. Dec. 1291, Abstract 17431, certain eyelet punchers, which had been classified as pliers in paragraph 361 of the Tariff Act of 1922, were held to be properly classifiable as articles in chief value of metal in paragraph 399 of said act. In the latter case, the court disposed of the alternative claim that the articles were machines, stating that "* * * after reading the record and examining the samples in evidence, we are convinced that there is no merit in plaintiff's contention that these articles are machines in any sense of the term. * * * To hold that these articles are machines merely because pressure upon the handles imparts increased power to the jaws, would require a similar classification for the simplest form of nippers or pliers. * * *"

While the witness Scott expressed the opinion that exhibits 1 and 2 were pliers, he also testified that he would consider surgical forceps and dental forceps to be pliers, although there is judicial authority holding that such forceps are not classifiable as pliers, which weakens the value of Scott's testimony.

In *Koch & Co.* v. *United States*, 6 Ct. Cust. Appls. 534, T.D. 36148, surgical forceps were held not to be pliers.

In *C. A. Sykes* v. *United States*, 30 Treas. Dec. 792, T.D. 36404, it was likewise held that dental forceps were not pliers.

Based upon an examination of the testimonial record and the exhibits, and in view of the principles and authorities considered above, we are of the opinion that the articles represented by exhibits 1 and 2 are not pliers within the meaning of that term, as used in said paragraph 361.

Before determining whether the articles in controversy should be classified in the catchall provisions of paragraph 397, we must first consider the alternative claim, which is not pressed, that the articles are properly classifiable as machines in paragraph 372, *supra*.

A case similar to this one in its legal aspects is found in *IDL Mfg. & Sales Corp* v. *United States*, 44 Cust. Ct. 13, C.D. 2146, affirmed in *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756.

We there held that certain hand-operated hole-punching machines were properly classifiable as machines, overruling the claim of the collector that said merchandise should be classified as articles in chief value of metal, not specially provided for.

In reaching our conclusion in that case, we applied and followed the decision of our appellate court in *Simon, Buhler & Baumann*

(*Inc.*) v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537. We referred to the definition of the word "machine," which was adopted and applied by the appellate court in the *Simon* case—characterizing it as a "judicial determination" of the common meaning of that term.

In affirming our decision in that case, and finding that the devices were within the common meaning of the term "machine," the court, in no uncertain terms, took exception to our statement that the *Simon* case judicially determined the common meaning of the word "machine." In its opinion, the court drew attention to the "unfortunate" references by that court in other cases to the definition of machine, pointing out, as that court had done in earlier cases, that "no decisive definition" could be given for the word, concluding, however, that the devices in the *IDL* case were machines within the common meaning of that term.

We are loathe to believe that the court intended to overrule the *Simon* case, so far as it is attributed to set up a definition of machines.

As stated by Garrett, Judge, of our appellate court, in *United States* v. *Guth Stern & Co., Inc.* (1933), 21 CCPA 246, T.D. 46777:

A careful analysis of this court's opinion in the *Simon, Buhler & Baumann* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term "machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

Further, the court stated, certain language being stressed:

In headnoting the case, the reporter, utilizing the language used in the text of the opinion, stated the definition affirmatively, and it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.

There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, *it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930.* Vide Summary Tariff Information 1929, volume 1, page 841.

Seventeen years later, in the case of *M. Pressner & Co.* v. *United States* (1950), 38 CCPA 8, C.A.D. 431, passing upon the classification of slide fasteners (commonly known as "zippers"), Chief Judge Garrett again referred to the *Guth Stern* case and, quoting from the case of *United States* v. *Associated Mfg. Co.*, 30 CCPA 236, 239, C.A.D. 238, involving the classification of children's tricycles, stated:

It has been held many times by this court that that definition [a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion] while correctly defining the term "machine," is a very broad one and it never was intended to mean that every mechanical contrivance which utilizes or applies or modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine. *United States* v. *Wm.*

*Goldenblum & Co.*, 18 C.C.P.A. (Customs) 367, T.D. 44616; *United States* v. *Guth Stern & Co., Inc.*, 21 C.C.P.A. (Customs) 246, T.D. 46777; *United States* v. *The Cottage Creamery Co.*, 22 C.C.P.A. (Customs) 327, T.D. 47362; *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C.C.P.A. (Customs) 148, C.A.D. 184.

The chief judge further remarked—

It will be observed from what we have quoted from the decisions that we have not agreed with the view of appellant's witness as to the classification of a number of the articles which he regarded as being machines under the phraseology of the *Simon, Buhler & Baumann (Inc.)* case, *supra.*

It is significant that, for more than 40 years, the definition in the *Simon* case has been cited with approval and followed by this court, our appellate court, and the bar as a judicial guide in determining whether given articles were or were not machines in a tariff sense.

While that definition has been followed, explained, interpreted, qualified, applied, and distinguished, it has never been overruled. The *Simon* definition has always been regarded as containing the basic elements which combine to describe a machine. Like most definitions, it is necessary to determine by competent evidence whether given articles contain those characteristics which satisfy the definition.

It is fundamental that the common and commercial meanings are the same, unless a commercial meaning different from the common meaning has been established. It is also fundamental that when a common meaning is established it continues as such, unless changed by congressional action. *United States* v. *Sheep Shearers Mdse. & Comm. Co.*, 23 CCPA 146, T.D. 48009, and cases cited therein.

It is important to note here that the definition adopted in the *Simon* case was applied and followed with approval in the following cases, decided by our appellate court in 1928 and 1929, respectively. *United States* v. *Janson Co.* (1928), 16 Ct. Cust. Appls. 315, T.D. 43075. *United States* v. *Van Bourgondien Bros.* (1928), 16 Ct. Cust. Appls. 420, T.D. 43135. *United States* v. *J. Reid & Co., Inc.* (1929), 17 CCPA 253, T.D. 43675. *United States* v. *August Merckens* (1929), 17 CCPA 318, T.D. 43742.

In *United States* v. *Klingerit, Inc.*, 17 CCPA 472, T.D. 43931, decided March 19, 1930, the court held that certain metal valves were not *machines*—

* * * within the machine definition pronounced by this court as quoted *supra.*

The "definition" referred to is contained in the following statement of the court in that case:

In the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, this court gave a definition of machine which we have since consistently followed and applied:

A mechanical contrivance for utilizing, applying or modifying energy or force or for the transmission of motion.

Congress, in framing the bill (which later became the Tariff Act of June 17, 1930) reenacting the provision for machines had full knowledge of the interpretation placed upon the word "machine," in the cases above cited, and thereby ratified the meaning ascribed to that word in the *Simon* case. *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, 414, T.D. 43133, *United States* v. *Guth Stern & Co., Inc., supra*, and *August Bentkamp* v. *United States*, 40 CCPA 70, 79, C.A.D. 500.

Since the passage of the Tariff Act of 1930, the definition announced in the *Simon* case has been cited with apparent approval by this court and our appellate court in innumerable cases, several of which are cited in the *IDL* case, *supra*.

The court, in the *IDL* case, stated that since—

* * * many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

And then went on to say that the merchandise in the case before it—

* * * goes by the name of paper punching machines. It falls within the median definitions of "machine" to be found in dictionaries so that one need not apply an extreme definition to include these punches in the term. * * *

The court then quoted the definition of "machine" given in Webster's New International Dictionary as follows:

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; * * *.

and added the following—

The same appears in the latest (1956) edition.[4]

---

[4] We add to the legal literature in this field the following definition, not previously noted in the opinions, from Hawkins' Mechanical Dictionary, published in 1909 by Theo. Audel & Co., New York:

*Machine.*—The word is most commonly applied to such pieces of mechanism as are used in the industrial arts, for mechanically shaping, dressing, and combining materials for various purposes; machines are frequently named from their use; as, screw cutting machines, or from the thing made or acted upon; as, machine ruler; compound machines are formed from two or more *simple machines*. *Tools* are the simplest implements of art; these when they become complicated in their structure become machines, and machines when they act with great power, take the name, generally speaking, of *engines*. [Italics quoted.]

Cf. Van Nostrand's Scientific Encyclopedia, 1938, wherein the definition of "machines" begins thus:

The term machine applies traditionally in physics to any one of those simple devices—lever, inclined plane, etc.—which might with greater propriety be called "elements of mechanism."

The Columbia Encyclopedia, 2d Ed., in the course of a discussion of over a column in length, says:

A machine is, on this basis, any device, simple or complex, by which the intensity of an applied force is increased, its direction changed, or one form of motion or energy changed into another form. Therefore, such simple contrivances as the LEVER, the PULLEY, the INCLINED PLANE, the SCREW, and the WHEEL AND AXLE are machines. These are classed as simple machines, the five being grouped together by engineers as the mechanical powers or the fundamentally simple machines, of which all the more complicated machines are merely combinations.

Against the background of these definitions the phrase "rise to the dignity of a machine" becomes meaningless. It would be more apt applied to the great dignity of simplicity, as for example in the lever, than to the foolish complexity of the "Rube Goldberg."

It was the conclusion of the court that the paper-punching machines were like stapling machines in their nature and use, which were held, in *T. D. Downing & Co.* v. *United States*, 52 Treas. Dec. 560, Abstract 3762, to be dutiable as "machines" in paragraph 372 of the Tariff Act of 1922.

Further, the court observed—

\* \* \* Congress knew of that decision, through the Summary of Tariff Information—1929, when it passed the 1930 Act and retained the provision substantially unchanged. We think this at least shows approval of the classification as "machines" of devices quite similar to those at bar.

The same reasoning applies to the punches and eyelet attachers in the case at bar, which have the same functional properties as the punches in the *IDL* case.

In a more recent case, *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786, the merchandise before the court consisted of light fixture pulleys, which the lower court held were properly classified by the collector in paragraph 397 of the Tariff Act of 1930, as modified, as articles or wares of metal, not specially provided for. In the course of its opinion, the court, reversing the opinion below, observed—

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, *supra*, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed.

The court, accordingly, held that—

\* \* \* the imported "pulleys" fall within the common meaning of the term "Machines" as generally understood \* \* \*.

Whether we apply the definition of the term "machine," which was adopted in either the *IDL*, *Nord*, or *Simon* cases, we find and hold that the subject merchandise is within the common meaning of the term "machine," as used in said paragraph 372.

The alternative claim of plaintiff that the importation in controversy should be classified as machines, not specially provided for, in paragraph 372 and subjected to duty at the rate of 11½ per centum ad valorem is sustained, that being more specific than the claim for classification in paragraph 397.

Judgment will issue in harmony with the views above expressed.