UNITED STATES v. THE SPIEGEL BROS. CORP.   (No. 5138)*

United States Court of Customs and Patent Appeals, April 9, 1964

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal, Stephen B. Swartz, J. F. Bishop*, for the United States.
*John D. Rode* for appellee.

[Oral argument February 3, 1964, by Mr. Bishop and Mr. Rode]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

RICH, Judge, delivered the opinion of the court:

*C.A.D. 839.

This ▮ appeal is from the judgment of the United States Customs Court, Second Division (C.D. 2382) sustaining, in part, the importer's protest to the classification of two items, both being hand tools. One is a 6-tube revolving punch of the type used for punching holes in leather. The other is an eyelet attacher or fastener by which a hole can be punched in a piece of material and an eyelet simultaneously inserted and crimped therein.

The collector classified both tools as "Other pliers valued at more than $2 per doz." under paragraph 361 of the Tariff Act of 1930, as modified by the Annecy Protocol to GATT, 84 Treas. Dec. 403, T.D. 52373, which paragraph reads in pertinent part:

> Pliers (not including slip joint pliers), pincers, and nippers, and hinged hand tools for holding and splicing wire, finished or unfinished:
>
>    \*      \*      \*      \*      \*      \*      \*
>
> Valued at more than $2 per dozen_____3⅓¢ each and 20% ad val.

The classification found to be proper by the lower court was as "machines" under paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to GATT, 91 Treas. Dec. 150, T.D. 54108, which reads in pertinent part:

> Machines, finished or unfinished, not specially provided for:
>   Other \* \* \* _____ \* \* \* 11½% ad val.

The importer also contended that the imports should be classified in the catchall provision of paragraph 397, "Articles or wares not specially provided for" etc., with respect to which claim the lower court overruled the protest.

The Customs Court correctly analyzed the issues as follows:

> As we view the record, the following questions are presented for our determination.
>
> 1. Are said revolving punches, with six tubes, and eyelet attachers, pliers, within the meaning of paragraph 361?
>
> 2. If question 1 is answered in the negative, are said articles machines within the meaning of said paragraph 372?
>
> It obviously follows if said articles are neither pliers nor machines, they are encompassed by the catchall provisions of paragraph 397.

The answers the court gave were, to question 1, not "pliers"; to question 2, they are "machines"; the catchall provision was therefore not reached.

We are of the opinion that the lower court erred in its answer to question 1, for reasons hereinafter explained, and we do not reach the other two questions. Our judgment is that the collector was correct in his classification.

Before considering the legal issues we shall first amplify the description of the imports.

The punch, which was invoiced as "Revolving Punches," is a plier-type hand tool such as will be found illustrated in the last few editions of Webster's New International Dictionary under the word "belt punch." A sample of the imported punch is in evidence as Exhibit 1. Appellee's president, Mr. Spiegel of the Spiegel Bros. Corp., identified a catalog of Steelcraft Tool Corp. as a catalog which his firm publishes, several pages of which were put in evidence. This catalog appears to be that of a wholesaler directed to the hardware store trade. On page 24 Exhibit 1 is listed and pictured under the title "Revolving Leather Punch" in a catalog section headed "Special Promotional Items." It is described as "9″ long, polished, knurled handles, strong spring. 6 standard tubes" and priced at $8.85 per dozen. The tool consists of two arms crossing each other at a pivot to provide 6″ handles and 2″ jaws. A strong coiled-wire spring about the pivot forces the handles apart. One jaw carries a flat brass anvil riveted in place. The other jaw carries a rotatable cylinder of about 1″ O/D in which the 6 punch tubes are radially mounted, the tubes having sharpened ends. A strong leaf spring secured on the face of the jaw with a screw engages notches in the cylinder to hold it in selected positions. When the handles are squeezed together a hole of selected size can be punched in material, such as leather, held on the anvil.

The other tool, in evidence as Exhibit 2, described on the invoice as "Eyelet attachers," is described in the same section of the aforesaid catalog on page 27 as "Eyelet Setting Tool." It is 6″ long, has two crossed pivoted handles, spring separated, the handles being 4½″ long and the jaws 1½″ long. The jaws carry male and female eyelet setting dies, respectively, the male die having a punch to make a hole in the material to receive the eyelet and the female die having a hole to receive the punch. By placing an eyelet on the punch and closing the tool on material the eyelet is inserted and crimped in place in a single operation. The price listed is $4.95 per dozen, display packed with 100 eyelets in each package.

Appellee called one witness, the aforesaid Mr. Spiegel. He identified the merchandise, explained its operation and use, and stated it to be his opinion that neither Exhibit 1 nor Exhibit 2 is a "plier." He was not cross-examined. He said he agreed with the following definition read to him from Webster's New International Dictionary, 2d Ed., purporting to define "pliers": A kind of small pincers with long jaws, used for bending or cutting metal rods or wire, for handling small objects, etc." He then volunteered, "I would go as far as to say that a plier can be used for various purposes, but the articles here, Exhibits 2 and 3 [Ex. 3 is the catalog description of Ex. 1] are used only for the specific purpose which they are used." Except for that

one definition read to him, no other evidence was offered to support his opinion that Exhibits 1 and 2 are not "pliers."

The Government called one witness, Walter D. Scott, associated since 1927 with Sargent and Company of New Haven, Connecticut, makers of locks, builders' hardware, pliers, and hand tools. He was, at the time he testified, merchandise manager of all the company's products, a position he had held for 5 years. In 1947 Sargent bought the William Schollhorn Co., tool and plier manufacturers, which was set up as a tool division of Sargent and Mr. Scott was made its general sales manager. He testified that his company makes a tool exactly like Exhibit 1, the punch. The testimony is quoted:

> Q. Will you tell us, please, based upon your experience with your company, what, in your opinion, Exhibit 1 is?
> A. Exhibit 1 is and has been catalogued by our company as a revolving head spring belt punch plier.
> Q. And for how long has that been so known to your company?
> A. Long before my connection with the company, because the catalogues which we took over referred to them as belt pliers.
>
> \* \* \* \* \* \* \*
> (The catalogue of Sargent & Co., page 5, which was marked Defendant's Exhibit A for Identification was received in evidence and marked Defendant's Exhibit A \* \* \*.)
>
> \* \* \* \* \* \* \*
> Q. Mr. Scott, referring to Defendant's Exhibit A and the two items which you have checked, for how long has your company sold those as punch pliers?
> A. Long before my experience with them. I would say for probably fifty years these have been manufactured and marketed.

At this point counsel elicited Mr. Scott's testimony with respect to the other item at bar, the eyelet fastener, Exhibit 2, and he continued:

> Q. Mr. Scott, I show you Plaintiff's Exhibit 2, and ask you if you are familiar with an article like that?
> A. Yes, sir.
> Q. How are you familiar with such an article?
> A. Having sold them and seen them made, and seen them used.
> Q. For how long, Mr. Scott?
> A. Since 1948.
> Q. Based upon your experience in the manufacture and selling of an item like that, would you tell the Court what, in your opinion, Exhibit 2 is?
> A. This is an eyelet plier.
> Q. And will you explain to the Court why you say that is an eyelet plier?
> A. Because it is a plier frame, to which have been added dies, making it possible to punch a hole in fabric, leather, plastic, cardboard, what have you, and at the same time, set an eyelet.
> Q. Referring to Defendant's Exhibit A, Mr. Scott, will you look through that and see if you can find in there an article like Exhibit 2?
> A. Yes, sir, on page 8 we illustrate an eyelet plier.
>
> \* \* \* \* \* \* \*

Q. Mr. Scott, referring to Exhibit A on page 8, * * * will you tell us how long your company has sold that article as an eyelet plier?

A. I would say that history would go back at least fifty years. It was an established product when I became familiar with it in 1948.

Q. And it was sold as an eyelet plier?

A. It was sold as an eyelet plier.

The views expressed in the foregoing testimony of the witness are borne out by the catalog itself. The heading on the page whereon the punches like Exhibit 1 appear is "LEATHER-WORKING TOOLS—SPRING BELT PUNCH PLIERS." On page 8, the item like Exhibit 2 is listed as "EYELET PLIER." One next to it of closely similar construction is listed as a "TERMINAL AND EYE-LET PLIER."

So much for the testimony. We turn now to the usual aids used in determining common meaning. Quoted above, in discussing Mr. Siegel's testimony, is Webster's definition from the New International Dictionary. The Customs Court referred also to Webster's New Collegiate and Webster's New World Dictionaries which are abridgments and give the same definition of which, on cross-examination, Mr. Scott said, "There is nothing incorrect; it is not inclusive. * * * I can cite many examples of pliers in Mr. Spiegel's catalogue which are pliers, but do not grip small articles." In this connection we note that plaintiff's catalog contains 4 pages, in evidence, headed "PLIERS" showing over 40 items including such diverse tools as "wire strippers," "diagonal cutting pliers" which are cutting tools rather than "pincers," "vise grip pliers," and "carpenters pincers" an illustration of which appears in Merriam-Webster dictionaries under the word "pincer." Appellant's brief calls attention also to the following definition from Funk & Wagnall's New Standard Dictionary (1956 ed.) which was not mentioned in the opinion below (we quote only a part):

Pliers are named (1) from their use or purpose; * * * (2) from the shape of their jaws; * * * (3) from their mechanism; as punch pliers (having in one jaw a hollow punch and in the other a corresponding die or counter, as a shoemakers' punch) * * *.

■ With respect to such things as tools, we have observed that common nomenclature is employed in various useful arts which is not always adequately reflected in dictionaries for general use and this court has often, therefore, had recourse to other more precise sources of information as to the common meaning in various trades of the words common thereto. In *Koch & Co.* v. *United States*, 6 Ct. Cust. Appls. 534, T.D. 36148, 30 Treas. Dec. 217, cited in the lower court's opinion, this court referred nearly half a century ago to Knight's American Mechanical Dictionary (1876) for guidance in this very field. We find it helpful again to refer to that three-volume work, in-

deed, to the same marked volumes. Under "Punch" the following appears on p. 1833:

> Punch-pliers, having a conical punch with a hollow cylindrical aperture, are used by saddlers for cutting holes in leather; such punches are sometimes made oval for making elongated holes; they usually cut against a piece of copper in the other jaw of the pliers.

On page 1885 is this:

> *Punchpliers.* One jaw of this tool has a hollow punch, and the other forms a flat die against which the punch operates. They are used by shoemakers, conductors on railroad and street cars, and generally for mutilating tickets to prevent their being used a second time.

This is an appropriate place to mention that plaintiff's counsel in cross-examining Mr. Scott said, "Would you say the punch that the railroad conductor uses was a plier?" Mr. Scott replied, "Yes, sir, a plier-type tool or a plier frame." In view of Knight's dictionary, that answer certainly did not weaken Scott's testimony though counsel and the court below may have thought it did.

Our analysis of the Customs Court's opinion in support of its conclusion that the imports are not "pliers" shows that the argument proceeds as follows: (1) The three dictionaries referred to all define "pliers" as "small pincers with long jaws used for bending or cutting metal rods or wire, for handling small objects, etc." and "Obviously, the articles represented by exhibits 1 and 2 do not conform to the foregoing definitions." (2) The 1929 and 1948 Summaries of Tariff Information support this conclusion in saying that (1929 issue) "Pliers are forged steel tools adapted to grasping small objects, and often having a cutting edge." (3) The Customs Court opinion in *Ritter Carlton Co.* v. *United States*, 8 Cust. Ct. 99, C.D. 584, contains reasons why the article there was not classified as "pliers" which reasons apply here.[1] (4) Scott's testimony is weakened by his having said that surgical and dental forceps are "pliers." (5) Conclusion: the imports are therefore not "pliers." We will discuss these points seriatim.

As to (1) we are of the opinion that the lower court proceeded on too narrow a base in the three dictionaries it used to "refresh its memory" as to the common meaning of "pliers." We do not presume ever to have known just what the term meant to those conversant with hardware and hand tools in 1930 but, having undertaken to find out, we have come to the conclusion that the witness Scott was right in his view that the imports were there and are now to be considered

---

[1] There is a paragraph of discussion also of *H. Boker & Co., Inc.* v. *United States*, 56 Treas. Dec. 833, Abstract 9783, and of another case, *H. Boker & Co.* v. *United States*, 60 Treas. Dec. 1291, Abstract 17431, in which it is said eyelet punchers of undisclosed construction classified as pliers were held to be properly classifiable as articles in chief value of metal under the 1922 Act and not machines. It appears, however, that the government did not contend they were "pliers" and stated that they had been so classified inadvertently. In the same case (60 Treas. Dec. 1291) "sewing machine belt punchers" were said by the government appraiser to be "sewing machine pliers" and the protest as to them was overruled. The Customs Court herein does not appear to rest any argument on the foregoing Abstracts.

"pliers" and that appellee's president, Mr. Spiegel, was wrong. Mr. Spiegel's company's own catalog lists under "pliers" many items which "do not conform" to the three repetitive definitions on which the lower court relied.

As to (2) the statements in the Summaries of Tariff Information, in the light of the record here, are obviously too scant to be of help. They are even less inclusive than the definitions in the three Webster's dictionaries, cited. They are not, however, inconsistent with our conclusion.

Point (3), the *Ritter* case opinion, developed six factual observations about the multigrip wrenches there involved with reference to what those wrenches were *not*, or could *not* do. The point of reference was obviously the same Webster's definitions the court relied on here. Excluding an article from that definition is not enough to show that in common meaning a tool is not "pliers." Beside which, some of those points do not apply here. For example, the *Ritter* wrench jaws could not be brought together. The jaws of the tools here certainly can be. Again, ability to handle "small articles such as parts of a watch" was one of the observations. It is obvious that the majority of pliers, excepting jeweler's pliers, by common knowledge are ill-adapted to handling watch parts.

As to (4), Mr. Scott, on cross-examination, asked if he thought dental forceps and surgical forceps were pliers and he said "Yes." He was speaking, of course, not as an expert on customs decisions but of his knowledge of the meaning of the term "pliers" in common parlance. The lower court said the expression of this opinion "weakens the value of Scott's testimony," because there "is *judicial* authority holding that such forceps are not *classifiable* as pliers" (emphasis ours), citing *Koch & Co.* v. *United States*, supra, and *C. A. Sykes* v. *United States*, 30 Treas. Dec. 792, T.D. 36404. All of the goods in the *Koch* case were surgical instruments. The case arose under the Tariff Act of 1913, paragraph 166: "Nippers and pliers of all kinds, wholly or partly manufactured." The imports were known as "forceps," which was one point considered, and there was no evidence, so far as the opinion shows, that they were ever known as "pliers," which is not the case here. The controlling consideration, however, was the legislative history, extensively reviewed in the opinion, which showed conclusively that an effort had been made by amendment to include in paragraph 166 "surgical and dental instruments or parts thereof" and that the amendment had been rejected. The court said:

> Congress, therefore, having expressly refused to include surgical or dental instruments in paragraph 166 for dutiable purposes, the court does not feel warranted in here including them, holding Congress did that by implication which it expressly refused to do by direction.

We are unable to see that the answers given by the witness, though erroneous as a matter of customs *law*, a field in which the witness was not qualified, on hypothetical situations, in the least weakened his testimony with respect to the actual imports which were before him and which he had been engaged in selling for many years. When he said Exhibits 1 and 2 were commonly known as "pliers" he was not merely expressing an opinion. He backed up his statement of fact with the Sargent catalog wherein they are so designated.

The lower court's conclusion (5) is, therefore, one with which we cannot agree. ■ The collector classified the imports as "pliers" under paragraph 361, which classification is entitled to the benefit of the usual presumption of correctness. The evidence in the case, in our judgment, when carefully weighed, lends considerably more support to the collector than to the appellee. The dictionary aids to the determination of common meaning, with respect to the very items at bar, show that they have actually been commonly known as "pliers," albeit pliers of a specialized kind for a particular purpose. Reason and logic dictate that the collector must be sustained on this point.

We need not, therefore, discuss the perplexing question of whether the imports—if not "pliers"—would properly be classified as "machines" under paragraph 372, nor consider the Customs Court's critical analysis herein of our opinion in *IDL Mfg. & Sales Corp.* v. *United States*, 48 CCPA 17, C.A.D. 756, which we have twice adhered to in *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786, and *Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820.

The judgment of the Customs Court insofar as it sustained the protest is *reversed*.

WORLEY, C.J., concurs in the result.